May it please the court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner, Lakhbir Singh. Obviously the threshold question in this case is credibility. In finding that Mr. Singh's testimony was unworthy of belief, the immigration judge focused almost entirely on omissions. Not omissions in his testimony or omissions in his written declaration or application for asylum, but rather omissions contained in various corroborating affidavits that his elderly father with a ninth grade education obtained in India and forwarded to the United States. I think the immigration judge's decision here is somewhat puzzling because it's clear that an absolute lack of corroboration cannot undermine otherwise consistent credible testimony. So it's puzzling to me how a partially corroborated case can undermine such consistent testimony. But that's exactly what happened in this case. And I want to sort of walk through the documents that the immigration judge relied on, if I can. The first one, this is at page 431 of the administrative record. This is a declaration from Mr. Singh's father, Pargat Singh. It's intended to verify or corroborate his claim of having been arrested on two separate occasions. And in that declaration, Mr. Singh's father states, quote, the police arrested my son on July 27th, 1995, from the Gurdwara. And after this, the police arrest him from the electrician shop of my son on dated October 30, 1995. Obviously, this thing's written in somewhat broken English. But it spells out the essential facts. My son was arrested on two separate occasions, gives the dates. The immigration judge found not only does this not corroborate Mr. Singh's testimony, it actually undermines his credibility because it doesn't, in addition to stating he was arrested, it doesn't mention how he was released. It doesn't mention that a bribe was paid. Well, yes, it would be better. Certainly, the declaration would have been more helpful if it contained those sorts of declarations, those sorts of details. But the absence of those details does not undermine Mr. Singh's credibility. I think it goes back  to the lack of detail in corroborating testimony. With general rules that govern the determination of credibility in any other kind of a trial-type proceeding, let me see if I can be more specific. It seems to me that a factfinder is entitled to consider in determining credibility not only the witness's testimony, but how that case, particularly any documents or the testimony of other witnesses, in deciding whether or not the version that the person told from the witness stand is true or false. Is our case law different in the immigration arena when it comes to judging the credibility of Petitioners before the I.J.? I don't think so, Your Honor. Obviously, in assessing credibility, you have to do it in the context of other evidence. And certainly, one of the things that an immigration judge is going to look at is the Petitioner's ability to give detail, add detail to his account. But that's not the problem here. The immigration judge isn't faulting this particular applicant for his inability to give detail. Rather, the immigration judge is saying here that these corroborating affidavits that were obtained by other people, obtained by his father and written by other people, don't contain enough detail. And I would submit that the absence of detail in those sorts of corroborating affidavits, it really goes to the amount of weight that should be given to such an affidavit. Isn't it really an attack on whether or not it is truly impeaching? Isn't that another way to say what you're saying? Yes. I think if the affidavits were shown to be inconsistent, if they contained factual assertions that are inconsistent with his testimony, I would say that's impeaching. But the mere fact that the affidavits are brief and don't include details about these various incidents, I would say, no, that doesn't undermine credibility. It really goes to the weight that should be given to those various affidavits. What about the concept of sort of bias in the creation of the evidence? I mean, wouldn't it be different if the corroborating document was from a completely objective source as opposed to a family member who is preparing them knowing that he's trying to help his son with an immigration case in the U.S.? Yes. And is that an appropriate consideration for the I.J. to give in weighing the value to the document? Absolutely. In weighing the value of the evidence, absolutely. But that, to me, is a separate matter from what's at issue in this case. What's at issue here is not the I would agree that some of these documents are so schlocky, frankly, and so brief that they're almost useless in terms of an evidentiary submission. But that's a separate matter from whether or not they undermine the credibility of his testimony. In order to ask the question in a different way, knowing that they come from the father, is it unreasonable for the fact finder to ask for greater consistency in the document itself because of the fact that it comes from a biased source? Perhaps, yes, in terms of consistency. But, again, there is no inconsistency here. The issue here is not whether the document is somehow inconsistent with his testimony. It's really a question of whether it's a complete account of what took place. And that, I think, is a critical distinction. Again, I think it goes to weight. The more detail in an affidavit, the more impartial the source, if it's an official source even more so, the document would be entitled to more weight. I would absolutely agree with you. But that's a separate question from whether or not you can say that the absence of detail in such an affidavit somehow undermines the petitioner's testimony. I think that's a stretch. Alito, would it be unreasonable to expect or to speculate, I guess would be the word, that the petitioner would have spoken with his father about what he needed for the immigration proceeding, and so that the I.J. would be expecting a document that was more consistent or in line with what the son was saying? You know, if you're asking would it be better if Mr. Singh had told his father exactly what to write, I'm not sure that makes the document any more useful, Your Honor. I mean, sure, he could have called his father up. It might avoid the problem, though, I guess. Right. Exactly. But then of what value is the evidence if it's really just a recitation coming directly from Mr. Singh himself? Sure, he could have called his father and said, hey, I need a declaration that says I was arrested, you paid a bribe, I need all these various details in there. Yeah. And maybe his father, with his ninth-grade education, could have gone to see a lawyer in India and done that. That's not the way to put it. Or maybe Mr. Singh's – I assume you were not the counsel before the IJ hearing. No. I was not. Maybe Mr. Singh's lawyer at that time could have done a better job of sort of marshalling the evidence. I mean, we've all written declarations for third parties that we want to introduce that year. You're absolutely right. Okay. I think his lawyer could have done a better job. I think the declarations could have been more complete, and if they had been more complete, they would have been deserving of more evidentiary weight. But I don't think that they in any way undermine his testimony, because they're not inconsistent So you wouldn't go so far as to say that because they don't provide that level of consistency that the IJ is permitted to draw an adverse inference from that fact? No. I would say that if the documents were, in fact, inconsistent or shown to be fraudulent, yes, the immigration judge could certainly draw an adverse inference from that with regard to credibility. But if we're dealing with corroborating affidavits sent by perhaps uneducated, illiterate people who have perhaps no familiarity with their own legal system, let alone our legal system, and the issue is whether or not they're complete, no. I don't believe that omissions in those sorts of corroborating affidavits can be sufficient to allow an immigration judge to draw an adverse evidence. Does our law permit the immigration judge to simply say, I choose not to believe that particular piece of evidence because it comes from his father? No. I mean, the law in this circuit, and I believe in most circuits, is that you cannot simply dismiss an affidavit because it's, you know, it benefits the person presenting it. So when I used to cross-examine wives and girlfriends of defendants, it was wrong for me to simply point out to the jury that the defendant called his mother to testify on his behalf? No. I don't agree with that either. I think it's perfectly fine for you to show bias. The question was whether it can be dismissed. I don't believe it can be ignored. It certainly can be given little weight. Don't we permit the fact finder in any other kind of a proceeding to simply decide that they don't want to believe or credit a particular item of evidence because they don't think that it's believable? Well, let's just assume that in this case the immigration judge decided that she doesn't want to credit any of these affidavits. Let's just assume that to be true. Okay. Well, he didn't need to present the affidavits to begin with in order to establish the merits of his case, because his credible testimony alone is sufficient. The issue isn't to say that the immigration judge said, I refuse to credit this because it's from his father. Pardon me, Your Honor? There's no place in the record, is there, where the immigration judge says, I refuse to credit this because it's from his father? No, there's not. But my point is, even if the immigration judge had made such a ruling, it wouldn't by itself undermine his credibility, because this is corroboration. And it's true, maybe the corroboration isn't entitled to great weight, but that's a separate question from whether or not the corroboration presented here is so adverse or so inconsistent, because it's not inconsistent at all, in order to undermine the consistency or credibility of his testimony. We've been occupying you with questions, and if you don't mind staying up here for another minute, I've got another one. What do you do with the inconsistency between the petitioner's statement as to his injuries and the nature of his treatment from the doctor, and the doctor's statement in his affidavit as to the treatment that was provided? The immigration judge made a point of this. The doctor says, I gave dressings. The petitioner says, I got pills and ointment to be rubbed. Is that an inconsistency that should concern us, or that the IJ was entitled to rely on to the extent that she did? I actually don't find the doctor's letter to be inconsistent. I mean, this is on page 435 of the administrative record, and the key portions of that are the third and fourth paragraph. The third paragraph says, I have visited in the year 1995, and I have given treatment to Mr. Lokveer Singh. Given treatment. I have made dressings on the injuries of Mr. Lokveer Singh on 1st August, 1995. Now, he testified that he was given pills and some sort of an ointment, something that had to be rubbed on the body. The dressings, that to me is what he's talking about here. That's the ointment, whatever they rubbed on the swollen parts of his body. He says, I have given treatment. Well, yeah, Lokveer, Mr. Singh testified that that included pills and capsules. Again, it could have been more specific, but when he says, I have given treatment, I assume that he's not giving us the exact nature of that treatment. He did list one thing, the dressings, but I think that, again, this may be considered somewhat incomplete, but it's not inconsistent. And I heard you say that in your view it's possible to construe the word dressings as an ointment that was to be applied externally? Well, the medical dictionaries that I consulted, yes. It's any application of any sort of therapeutic balm or salve or it can include gauze, things like that. Thank you very much. We've held you over with questions. We'll give you a minute on rebuttal. May it please the Court, I am Blair O'Connor and I represent the Attorney General on this matter. Your Honors, the burden of proof in establishing eligibility for asylum is on the applicant himself. He satisfies this burden by providing credible, direct, and specific evidence of either past persecution or a well-founded fear of persecution on account of a qualifying ground. The determination of whether he satisfies this burden rests in the discretion of the Attorney General and his delegates. While the Petitioner in this case may have shown May I interrupt you for just a moment? And what's the burden on the I.J. if the I.J. is going to find, enter an adverse credibility finding? She must base that finding, Your Honor, with specific cogent reasons for why the Petitioner was, credibility was, and just a statement, I don't believe it, is not enough. Yes, Your Honor, must be specific cogent reasons. Now, while the Petitioner in this case may have shown that the evidence of record could have supported a conclusion contrary to the immigration judges, he has failed to show that it would compel a contrary conclusion. In other words, he has failed to show that the evidence was such that no reasonable fact finder could have found that the Petitioner presented credible testimony of either past persecution on account of religion or imputed political opinion. But what I need to know from you, though, is what are the specific – and give me the standard again that the I.J. must satisfy to enter an adverse credibility finding? Specific cogent reasons. So what are the specific cogent reasons that the I.J. provided to support her adverse credibility findings? Yes, Your Honor. I was just pointing out we do have the inconsistency between Mr. Sinn's testimony that he suffered no external injuries whatsoever as a result of the two detentions with the doctor's affidavit that he provided dressings on both occasions. And it was fair – it was a reasonable inference for the immigration judge to conclude that dressings normally are done for external injuries, cuts, bruises, cuts or open wounds, things of that nature. Now, how about ointment? Is ointment for an external or for an internal? Your Honor, ointment could be either – could possibly be external or internal. How do you know that? That is to say, how is it – in terms of treatment of external to internal, how do you know that a dressing is different from an ointment, whether either one would be necessary on your theory of medicine? Well, I'm not a doctor, Your Honor. I mean, I – And neither am I. But I just heard your argument to say, well, something external wouldn't be – like a dressing wouldn't be used to treat an internal injury. But that argument includes ointment. Yes, Your Honor. His testimony was ointment. Yeah. Okay. Another inconsistency pointed out in that both Petitioner's direct examination and his asylum application, he indicated that following the first arrest, he reduced his visits to the temple. And this was after someone who had gone to the temple twice a day, every day, for 10 years. But because of his fears of being arrested again, he says that he reduced his visits – he said he reduced his visits following the first arrest. It was only on cross-examination when his story was starting to be questioned by the Counsel for the Service that for the first time he says, oh, I stopped going altogether. And again, he never mentioned that in either the asylum application or on his direct examination. It was only that he reduced his visits, not that he stopped them altogether. The direct examination, this is the extent of it. You're right. He didn't say very much. Question. And were you going everywhere you used to go with the same – the same exact way you did before you were arrested? No. I started going to the Sikh temple somewhat less. And why was this? Da-da-da-da. Because I was afraid of the police. So we don't get much elaboration from this. That's right. Is it inconsistent when he says, in response to further questioning, well, I started going somewhat less and then after a month or so I quit going altogether? Or is it merely an elaboration at a later time? I would say, Your Honor, to the extent that is – that can be construed as inconsistency. For someone who is devoutly religious as he claimed to be, it would be very significant that when the reason he can't go to the temple is because of his fears of arrest, that when he's in an asylum application and he's free to say whatever he wants, he's not under the constraints of examination, that he would put in there that I was prevented from going completely because of my fears of being arrested again. And that can be construed as an inconsistency, Your Honor. Okay. Another thing we would point out is that in his testimony, he testified that he was released from the second period of detention on November 3rd, and that this is the second time on November 1st. And again, under Petitioner's testimony, he still would have been in detention at that time, so the doctor could not have treated him. November 1st of what year? 1995, Your Honor. And he's testifying when? He's testifying in the Asylum of Basenza in 1998, Your Honor. What did you do three weeks ago? I was probably out working, Your Honor, working on a brief. And what was that date? Sometimes a story is too good. Yes, sir. And parts of this story may be too good, not too bad. Yes, Your Honor. Another thing we would point out is that on questioning, he said that the affidavits from Captain Avatar Singh and Darshan Singh, in testimony he said that these two were present at the temple on July 27th when he was arrested, and that they witnessed him being forcibly dragged out by the police, and that they tried to protest and everything like that. And that this is, you know, this can be construed as being inconsistent when we get the two letters from them, there is absolutely no mention whatsoever of this arrest. In fact, the only thing they say with respect to alleged persecution is that he was harassed by the police. And for two people who allegedly had witnessed this event, we say it is unreasonable to say that he can say that it is reasonable to assume that if he submits a letter from them, they would have at least recounted them having witnessed this event that occurred. Another thing we would point out is that, though, again, it depends on what they were asked to say. Maybe they were merely asked to say, well, what I need is some evidence that, in fact, I'm a genuine and religious Sikh. And so they say, Mr. Lakbir Singh is a religious boy, no links to the illegal parties he believes in God, illegal persons he believes in God, goes to the Gurudwara for praying morning and evening. So I understand that it's incomplete, and I think that is a cogent point, but I'm not sure that it means that his story is false. Yes, Your Honor. Well, again, they do mention the fact that he was harassed. So at least they probably were indicated that, you know, he must show persecution, which is why they probably mentioned it. And it's just sort of very, it's got the aura of inconsistency that they would not mention having witnessed him being forcibly arrested by the police. Furthermore, when someone is placed with the burden of showing persecution, showing that under his testimony, if he's returned to this country, he could be possibly killed, it is reasonable to suspect that when he goes out and gets evidence to support this, that he would make sure that that evidence is as specific and detailed as possible. Another thing I do want to point out quickly is that under Petitioner's testimony, he said that the reasons, first of all, when first asked, he said he had no reason why the police arrested him on both occasions. But then he testified that they asked him about alleged assistance he gave to Sikh terrorists by giving them food. And this occurred in 1995. We point out, though not specifically pointed out by the immigration judge, it is found in the State Department reports that the government, Indian government, cracked down on Sikh terrorists during the period of 1991 to 1992. And by 1993, Sikh terrorists had pretty much come to, they were virtually eliminated. And that was supported by a report by Amnesty International. And they said that if an asylum applicant gives as an explanation for police excesses of abuse while being detained, alleged association of Sikh terrorists, that this is no longer a credible claim. And where is it in the record? Because I read this, but I'm missing. Where does he say he gave food to Sikh terrorists? That was during his testimony about page, pages around 125 to 140. And also in his asylum. That's a lot of pages. I'd like to see where he says I gave food to Sikh terrorists. Or I doubt he said it exactly that way. I'd like to read whatever he said. This is on page 132, Your Honor. He says, did they do anything else to you? They were asking me that terrorists come to the Sikh temple and also they come to your house and you give them food. And it's also mentioned in his asylum application, Your Honor, in his affidavit at page, pages 447 to 448. And page 447, he says, I'm slow. I'm slow. Yes, Your Honor. Okay. I'm on 447. The third of the last paragraph, they accused me that I was providing food to the militants at the Gurdwara, which is the temple. I see. And you're saying that this is not plausible, that they would have been there. And pages 218 of the record, this is the State Department report. It says that the Indian Human Rights Commission, in paragraph... Again, I'm slow, but I'll get there. And if we're running you over, that's not your fault. Okay. I'm on page 218. Yes, Your Honor. Paragraph 25, the Indian Human Rights Commission held four day of hearings in Punjab and found that the Punjabi militancy had ended. They concluded that such militancy no longer served as an explanation for police excesses. And that was the conclusion that was agreed upon also by Asia Watch and Amnesty International. Despite this improvement, the authorities continued to commit extrajudicial killings in 1994, although the number of such deaths declined to 33 in the first eight months of that year compared to 217 in the last eight months of 1993. Disappearances and unexplained custodial death in Punjab were very few in 94 and 95. The unexplained disappearances in 94 and 95 of three human rights lawyers representing Sikhs were notable exceptions to this generally improved picture. Yes. And these events took place in July and October. These alleged events took place in July and October of 95. Yes, Your Honor. Okay. If I may just sum up... Yes, please. Yes. Again, the evidence in this case, although possibly supporting a conclusion that Petitioner's testimony is credible, it does not compel such a conclusion. Based on the several inconsistencies in Petitioner's testimony in his asylum application, as well as the lack of significant details in the letters and documentary evidence submitted by Petitioner, a reasonable factfinder would certainly not be compelled to find that Petitioner was credible with respect to this claim. We would ask that this case be reviewed. Thank you, Your Honor. Thank you. Just very briefly, Your Honor. The government suggests that Mr. Singh was somehow inconsistent in saying that, on the one hand, he had no external injuries, and on the other hand, he had swelling. And the critical passage here, the first time this came up in the record is on page 137 of the record, when he was being asked about his treatment following his first arrest. And the question was, what kind of injuries was he treating, the doctor? And Mr. Singh replied, you know, the first time this came up, for example, I had swelling because of the internal injuries. I mean, he's clearly sort of conflating the two. He's saying, on the one hand, I had swelling, but he's attributing it to internal injuries. It's really, he doesn't know what's internal and what's external. And it's hard to call that an inconsistency. It's really how he was characterizing his various injuries. He was perfectly consistent on the question. How do you respond to the point that it's not likely that the police in 1995 would have been accusing him of helping terrorists? Well, a couple things, Your Honor. First, I don't think the immigration judge said that. She did, in fact, give a pretty stark rationalization for her decision. But moreover, I confess, I didn't see it in that, in the IJ's report. Yes. But moreover, one of the things that counsel on this case did correctly is he submitted a whole slew of background documents about country conditions. And many of those post-date that July 1997 State Department addendum, and they continue to show arrests of suspected militants and militant activities in Punjab. So the idea that militant activity had absolutely ceased, it's not consistent with the record. And of the various areas in India, are there particular areas where the Sikhs are more, have been historically seen as a greater threat to the Indian government? Certainly in Punjab, Your Honor. In Punjab, they're 60 percent of the population. And it's mostly in Punjab and the areas directly surrounding Punjab where the independence movement has taken hold. Okay. Thank you. Thank you very much. The arguments on both sides were very helpful. Yes. Thank you both.
judges: Canby, W. Fletcher, Tallman